August 1, 2023

The Honorable Judge Ann M. Donnelly                                              <u>VIA ECF</u>
United States District Court
  for the Eastern District of New York
225 Cadman Plaza East, Courtroom 4GN
Brooklyn, NY 11201

        Re:    *In re American Airlines/JetBlue Antitrust Litig.*, Lead Case No. 1:22-cv-07374
               (AMD-TAM): This Document Relates to All Actions

Dear Judge Donnelly:

       Pursuant to Rule 4(A) of this Court's Individual Practices and Rules ("Rules"), Plaintiffs Katrina Berger, Toni Guerin, and Dianne Buehler (collectively, "Plaintiffs") here respond to the pre-motion conference letter of Defendants JetBlue Airways Corporation ("JetBlue") and American Airlines Group Inc. ("American", collectively "Defendants"). ECF 46. Defendants' arguments for dismissal of Plaintiffs' operative complaint are premature, without legal basis, or both. They are makeweight at best in a case where much of the merits will be decided against Defendants under well-accepted collateral estoppel principles. *See United States v. American Airlines Grp.*, _ F. Supp. 3d _, 2023 WL 3560430 (D. Mass. May 19, 2023) (finding that the Northeast Alliance ("NEA") violates Section 1 of the Sherman Act); *Discover Fin. Servs. v. Visa U.S.A. Inc.*, 598 F. Supp. 2d 394, 396 (S.D.N.Y. 2008) (applying collateral estoppel as to issues decided against defendants in prior DOJ antitrust action); *see also* 15 U.S.C. §16(a).[1]

       **A Motion to Strike Class Allegations is Premature**: In the Second Circuit, motions to strike are "generally disfavored," *Gulino v. Bd. of Educ. of the City Sch. Dist. of N.Y.*, 2014 WL 10447206, at *3 (S.D.N.Y. Oct. 24, 2014), and "[g]enerally speaking," motions to strike class allegations "are deemed procedurally premature," *see, e.g.*, *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012); *see Woodhams v. Pfizer, Inc.*, 2021 WL 5304309, at *6 (S.D.N.Y. Nov. 15, 2021).[2]

       **This Action Cannot be Dismissed Based on a Purported Class Waiver**: Defendants ignore the obvious: plaintiffs who purchased from JetBlue *never* agreed to a class waiver with American

---

[1] On July 28, 2023, Judge Sorokin entered a Final Judgment and Order Entering Permanent Injunction ("Order"), No. 1:21-cv-11558-LTS, ECF 375 (D. Mass.). The Order requires the termination of the NEA Agreement, demands Defendants cease coordination of schedules and routes and any effort to allocate markets or share certain revenues. Order at §§III.A.-C. The Order also prohibits Defendants for 10 years from entering into any new alliance or partnerships or other agreement if the agreement provides for revenue sharing, or for coordination of routes or capacity, in a manner substantially similar to the NEA, among other proscriptions. Order at §III.G.

[2] Defendants attach 150 pages of exhibits contrary to the Court's Rules, which allow only a three-page submission. *See* Individual Practices & Rules at 4(A). These documents, apparently printed off the Internet, do not provide a basis to strike the class allegations even if Defendants' arguments were correct.

because they signed nothing with American; and those who bought from American likewise still have claims against JetBlue. This ends the inquiry – passengers of both airlines have claims against either as each is a co-conspirator under federal antitrust laws with joint and several liability. Defendants also presume the validity of their class action waivers, which appear in online contracts of adhesion.[3] But as with any purported contract, the provisions must be viewed in the context of "the method through which [the] electronic contract of adhesion [was] formed. The inquiry does not begin, as defendants argue, with the content of the provisions themselves," but rather with whether there was an "essential element of contract formation: mutual manifestation of assent." *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 383 (E.D.N.Y. 2015).[4]

Electronic contracts of adhesion are judged by a four-part fact-bound test that examines how the terms are presented, if the purchasing interface obscured or downplayed terms, whether a company notified a consumer of any unexpected terms (including, specifically, a class action waiver), and whether there is sufficient evidence of manifestation of assent to the terms. *Id.* at 402. Defendants' contracts of carriage fail this test: Defendants cannot demonstrate the necessary assent. At best, Defendants raise fact questions that require discovery. *See, e.g.*, *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 103 (2d Cir. 2022) ("[I]ssues of reasonable notice and objective manifestation of assent as a matter of law" are to be decided after "the parties conducted sufficient discovery and developed an ample record."). Indeed, Defendants' own authority, *Hahn v. JetBlue Airways Corp.*, No. 22-cv-07374 (E.D.N.Y. July 24, 2023), slip op. at 8, explains that where, as here, a purported contract is not the subject of a plaintiff's claims (*i.e.*, where plaintiff has not alleged a breach of contract) the existence of a class action waiver is an affirmative defense on which defendants bear the burden of proof that should not be raised in the context of a Rule 12(b)(6) motion to dismiss. *See id.* Reliance on *Hahn* also fails because in that single defendant breach of contract case, there was no question that the plaintiff had agreed to be bound by the contract of carriage as his claim was for its breach.

Further, Defendants cite no federal statute or policy favoring naked class-action waiver clauses untethered to arbitration clauses – likely because Rule 23's purpose "leaves no room for enforceability of private agreements among litigants to forego the efficiencies" of class actions. *Martrano v. Quizno's Franchise Co.*, 2009 WL 1704469, at *21 (W.D. Pa. June 15, 2009) (refusing to enforce class action waivers and forum selection clauses). Here, where Plaintiffs are pursuing federal substantive rights, the policy of enforcing a waiver appears even more suspect. And Defendants fail to acknowledge that, in addition to the above, Plaintiffs would have significant

---

[3] Defendants represent that JetBlue's and American's class-action waivers existed for the whole time the NEA was effective. American added the waiver as Defendants reached consensus about the NEA's terms; JetBlue added it when the NEA went into effect. If Defendants added the waivers to stymie consumer challenges to the NEA as part of "an integrated scheme to contravene public policy," they are invalid. *Gibbs v. Stinson*, 2021 WL 4812451, at n.20 (E.D. Va. Oct. 14, 2021) (citation omitted).

[4] Indeed, the Federal Aviation Regulations referenced by Defendants, 14 C.F.R. §§253.5-253.6, require airlines to provide "conspicuous notice" of terms incorporated in a contract of carriage and ensure that passengers can obtain a "concise and immediate explanation" of any such terms.

responses to any argument that the class action waivers here are enforceable to the extent they even apply.

**Plaintiffs Properly Plead Alternative Antitrust Proof Standards**: Plaintiffs have alleged antitrust claims based on both the *per se* and rule of reason standards of antitrust liability. Defendants' second argument ignores that a "court may conclude that a joint venture or a challenged restraint is *per se* illegal where it has 'manifestly anticompetitive effects.'" *Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 338 (2d Cir. 2008) (Sotomayor, J. concurring) (quoting *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 895 (2007)). Further, while the DOJ pursued only a rule-of-reason challenge, Judge Sorokin found that "at least one of the NEA's core features" may be "per se illegal: the defendants' assignment of various routes to either American or JetBlue." *American Airlines*, 2023 WL 3560430, at *35.

**Plaintiffs Properly Plead the Relevant Geographic Market:** Defendants' relevant market argument also warrants little consideration. "Because market definition is a deeply fact-intensive inquiry, courts hesitate to grant motions to dismiss for failure to plead a relevant product market." *Todd v. Exxon Corp.*, 275 F.3d 191, 199-200 (2d Cir. 2001). "'Courts generally measure a market's geographic scope, the "area of effective competition," by determining the areas in which the seller operates and where consumers can turn, as a practical matter, for supply of the relevant product.'" *Giordano v. Saks Inc.*, 2023 WL 1451534, at *18 (E.D.N.Y. Feb. 1, 2023) (quoting *United States v. Eastman Kodak Co.*, 63 F.3d 95, 104 (2d Cir. 1995)). The complaint defines the market as "the United States," and with good reason. ¶19.[5] The NEA scheme affected competition "outside the NEA region." *American Airlines*, 2023 WL 3560430, at *20. "It is neither logical nor possible to view the NEA's impact on the defendants' competitive relationship as confined to the northeast," *American Airlines*, 2023 WL 3560430, at *20, because "millions of consumers fly[] into, out of, or connecting through the Alliance Airports,"[6] ¶¶19, 20, 26.

Respectfully submitted,

| | |
|---|---|
| */s/ David W. Mitchell* | */s/ Israel David* |
| David W. Mitchell | Israel David |
| Alexandra S. Bernay | Blake Hunter Yagman |
| Arthur L. Shingler III | ISRAEL DAVID LLC |
| ROBBINS GELLER RUDMAN | |
|   & DOWD LLP | |

Interim Co-Lead Class Counsel

---

[5]  All "¶_" and "¶¶_" citations are to the Second Consolidated Amended Class Action Complaint for Violations of the Sherman Antitrust Act, ECF 41.

[6]  The Alliance Airports are "four of the largest airports in the United States": Boston Logan International Airport, LaGuardia Airport, John F. Kennedy International Airport, and Newark Liberty International Airport. ¶2.

4872-7782-5908.v1