UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
**KATRINA BERGER, TONI GUERIN, DIANNE**                      :
**BUEHLER, JILL A. KUPFERBERG, NANCY**                       :
**GOODMAN, SHEFTAL FRANKEL**,                                :   **MEMORANDUM DECISION AND**
                                         Plaintiffs,         :   **ORDER**
                                                             :
                                                             :   22-CV-7374 (AMD) (TAM)
                              – against –                    :
                                                             :
                                                             :
**JETBLUE AIRWAYS CORPORATION,**                             :
**AMERICAN AIRLINES GROUP INC.**,                            :
                                                             :
                                         Defendants.         :
------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

      This case arises out of a joint venture between JetBlue and American Airlines called the

Northeast Alliance ("NEA"), under which the two airlines agreed to operate as one for most of

their flights in and out of Boston and the New York City area.  This action consolidates several

private lawsuits and comes on the heels of another case brought by the United States Department

of Justice ("DOJ") in the District of Massachusetts.  *United States v. Am. Airlines Grp. Inc.*, 675

F. Supp. 3d 65 (D. Mass. 2023).  In the District of Massachusetts case, Judge Leo Sorokin held

that the NEA plainly violated antitrust law.  He issued a permanent injunction requiring JetBlue

and American to terminate the NEA and prohibiting them from entering into any revenue-

sharing or route-coordination agreement for ten years.

      The plaintiffs in this case are customers who allege they paid "supracompetitive prices"

for flights in and out of Boston and the New York City area while the NEA was in operation.

They bring a class action claim against the defendants, alleging a violation of antitrust law and

seeking damages.  Before the Court is the defendants' motion to dismiss the action or, in the

alternative, to strike the class action allegations.  For the reasons explained below, the motion is

denied.

## BACKGROUND

The following facts are drawn from the complaint.[1]  The Court accepts the allegations in

the complaint as true on a motion to dismiss.  *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183,

188 (2d Cir. 2020) (citation omitted).

## I.     The Defendants' Northeast Alliance

JetBlue and American entered into the NEA on July 15, 2020, and agreed to operate

together for most flights to and from Boston Logan International Airport, LaGuardia Airport,

John F. Kennedy International Airport, and Newark Liberty International Airport (the "NEA

Airports").  (ECF No. 53 ¶¶ 2, 4.)  Material provisions of this alliance included:

- codesharing, an arrangement in which each airline marketed and sold flights operated by the other airline (*id.* ¶¶ 59, 140);

- schedule coordination to "optimize" and allocate airline "resources effectively" with respect to flight routes, timing, aircrafts, and which airline staffed the flight (*see id.* ¶¶ 58, 140);

- revenue sharing, under which the two airlines pooled net revenues from flights to and from the NEA Airports and then shared that income according to an agreed-upon formula (*id.* ¶¶ 60, 140);

- and reciprocal loyalty and joint corporate customer benefits (*id.* ¶ 140).

JetBlue and American started implementing the NEA in early 2021.  (*Id.* ¶ 62.)

## II.    United States Department of Justice Antitrust Action and Decision

On September 21, 2021, the DOJ and seven state attorneys general sued JetBlue and

American in the United District Court for the District of Massachusetts to enjoin the operation of

---

[1] The plaintiffs' claims have been consolidated and amended several times; the operative pleading in this action is the Third Amended Complaint.  (*See* ECF No. 53.)

the NEA; they alleged that the joint venture violated Section 1 of the Sherman Act, 15 U.S.C.

§ 1.  (*Id.* ¶ 68.)  Judge Sorokin held a month-long bench trial beginning in the fall of 2022.  (*See

id.* ¶ 3.)  *See generally United States v. Am. Airlines Grp. Inc*., 675 F. Supp. 3d 65 (D. Mass.

2023).

      In a May 19, 2023 decision, Judge Sorokin found that the NEA "plainly violate[d]

Section 1 of the Sherman Act."  *Id.* at 128.  He issued a permanent injunction requiring among

other things that the defendants terminate the NEA, cease coordination of schedules and routes,

and stop revenue sharing.  *Id.*; Final Judgment and Order Entering Permanent Injunction, *Am.

Airlines Grp.*, No. 21-CV-11558 (D. Mass. Jul. 28, 2023), ECF No. 375.  (*See* ECF No. 53 ¶¶ 3,

6, 72.)  He also prohibited the defendants from entering into any revenue-sharing or route-

coordination agreement for ten years.  (*Id.*)

      Judge Sorokin found that the "overarching purpose of the NEA [was] anticompetitive"

because it amounted to a "naked agreement" between JetBlue and American not to compete with

one another and "instead[] operate as a single carrier in the northeast," which "is just the sort of

'unreasonable restraint on trade' the Sherman Act was designed to prevent."  *Am. Airlines Grp.*,

675 F. Supp. 3d at 74, 122.  He further explained that while the defendants claimed the NEA

would "benefit the flying public, they produced minimal objectively credible proof to support

that claim."  *Id.* at 74.[2]

---

[2] The defendants represent that on June 28, 2023, JetBlue exercised its contractual right to terminate the
NEA following Judge Sorokin's decision, and that the process required to unwind the NEA is "nearly
complete."  (*See* ECF No. 65 at 9.)

On October 5, 2023, American appealed Judge Sorokin's decision.[3]  *United States v. Am. Airlines Grp. Inc.*, No. 23-1802 (1st Cir. 2023).  The First Circuit heard oral argument on June 3, 2024, and has not yet issued a decision.

## III.   The Plaintiffs and the Current Action

The plaintiffs are four individuals who purchased at least one ticket from JetBlue or American to fly on an NEA route while the NEA was in operation.  (ECF No. 53 ¶¶ 12–15.)  The plaintiffs brought this action on December 5, 2022, after the DOJ bench trial concluded but before Judge Sorokin issued his decision.  (*See* ECF No. 1.)

The plaintiffs allege that the defendants violated Section 1 of the Sherman Act, and request declaratory, monetary, and injunctive relief on behalf of a single, nationwide putative class consisting of "[a]ll direct purchasers of airline tickets going to or from [the NEA Airports]" from July 15, 2020, "until the anticompetitive effects of Defendants' conduct ceases."  (*See* ECF No. 53 ¶ 145; *see also id.* at 49–50 (prayer for relief).)  The plaintiffs claim damages based on alleged "supracompetitive" prices they paid for their NEA flights, which means that the prices they paid were "artificially inflated . . . in the Relevant Market."  (*Id.* ¶¶ 149, 154, 158.)

The defendants move to dismiss the action or, in the alternative, to strike the class action allegations.  (*See* ECF No. 65.)  The plaintiffs oppose.  (*See* ECF No. 68.)

## LEGAL STANDARD

A court deciding a motion to dismiss accepts the factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor.  *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012).  "To survive a motion to dismiss, a complaint

---

[3] JetBlue did not appeal the decision.

must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

## DISCUSSION

### I.   Class Action Waiver

In seeking either dismissal or striking the class claim from the complaint, the defendants ask the Court to rely on screenshots of what they say "appear" "[d]uring the ticket purchase process on JetBlue and American's websites." (ECF No. 65 at 10.)  That request is denied.

The defendants assert that the plaintiffs agreed to one of the defendant airline's Contracts of Carriage ("CoC") when they bought their tickets. (*See* ECF No. 65 at 14.)  Both defendants' COCs included a class action waiver. (*Id.*)  The defendants assert that they gave the plaintiffs a link to the COCs when the plaintiffs bought their tickets.[4] (*See id.*)  However, the defendants do not cite the complaint for this assertion, and the complaint does not include any such information.  Instead, the defendants rely on screenshots of undated screens that they say appear "[d]uring the ticket purchase process on JetBlue and American's websites," "each of which provides a link to the carrier's CoC and notifies the customer that clicking to make the purchase means declaring assent to the terms in the CoC." (ECF No. 65 at 10.)  The defendants do not say when the screenshots were taken or whether they reflect the appearance of the respective websites when the plaintiffs purchased their tickets.

The defendants attach each airline's CoCs, which are also not a subject of the complaint, and quote the COCs in their briefs. (ECF Nos. 65, 66-2, 66-3.)  The relevant provision in JetBlue's COC reads as follows:

---

[4] The plaintiffs bought their tickets online.  At oral argument, counsel for American asserted that customers who bought their tickets over the telephone also got this information.

**40.  Governing Law/Section Headings/Waiver**
. . . Each Passenger agrees, on behalf of themself and anyone on
whose behalf they are purchasing, that any lawsuit brought against
Carrier or any of its affiliated entities, agents, directors, employees,
and/or officers related to this Contract of Carriage, their ticket,
and/or their use of or dealings with Carrier's website will be
brought only in an individual capacity and may not be brought,
alleged or asserted as part of a class action proceeding.

(ECF No. 66-2 at 61 (Ex. B).)

The relevant provision in American's COC says:

**Class Action Waiver:**  You agree that any lawsuit you bring
against us, or any of our affiliated entities, agents, directors,
employees, and/or officers related to these Conditions of Carriage,
your ticket, and/or your use of or dealings with American's
website will be brought only in your individual capacity, and may
not be brought in or asserted as part of a class action proceeding.

(ECF No. 66-3 at 3 (Ex. C).)

The defendants argue that the class action waivers in the CoCs mean that the plaintiffs

can pursue individual claims but have waived their ability to assert class claims.  (ECF No. 65 at

11.)  According to the defendants, the class action waivers are enforceable, they cover the

plaintiffs' claims, and the plaintiffs had sufficient notice of the waivers because the CoCs were

expressly incorporated by reference into the electronic tickets.  (*See id.* at 15–18.)

Whether there is a contractual waiver of a plaintiff's legal rights is an affirmative defense

under either Texas or New York law.[5]  *See AMS Const. Co. v. K.H.K. Scaffolding Houston, Inc.*,

357 S.W.3d 30, 42–43 (Tex. App. 2011) ("Waiver is an affirmative defense to a contract claim."

(citing Tex. R. Civ. P. 94)); *see Hahn v. JetBlue Airways Corp.*, No. 21-CV-6867 (E.D.N.Y.

Aug. 25, 2022), ECF No. 20 ("The existence of a contractual waiver of a plaintiff's legal rights is

---

[5] JetBlue's CoC has a New York choice-of-law provision, and American's CoC has a Texas choice-of-
law provision.  (*See* ECF No. 66-2 at 61 (Exhibit B); ECF No. 66-3 at 3 (Exhibit C).)  The parties did
not discuss these provisions but cite both New York and Texas law in their submissions.  Texas and
New York law are identical on the issue of contractual waiver as an affirmative defense.

an affirmative defense under New York law." (citing *Banc of Am. Sec. LLC v. Solow Bldg. Co. II*, 47 A.D.3d 239, 244–45 (1st Dep't 2007), and *Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 84 N.Y.2d 430, 433 (1994)).

A defendant asserting an affirmative defense has the burden of proof with respect to this defense. *Barton Grp., Inc. v. NCR Corp.*, 796 F. Supp. 2d 473, 498 (S.D.N.Y. 2011). "Ordinarily, a defendant may not raise affirmative defenses in a pre-answer motion to dismiss," *Edwards v. McMillen Cap., LLC*, 574 F. Supp. 3d 52, 66 (D. Conn. 2021), because "the facts necessary to establish an affirmative defense generally must be shown by matter outside the complaint," 5 Charles Alan Wright et al., Federal Practice and Procedure § 1277 (4th ed., update 2024). Accordingly, a district court may defer consideration of the effect of a class action waiver until after discovery if its applicability is not obvious from the face of a complaint. *See, e.g.*, *Tanasi v. New All. Bank*, No. 12-CV-646, 2013 WL 12308197, at *8 (W.D.N.Y. Aug. 27, 2013) (deferring ruling on class waiver that may have appeared in some putative class members contracts but not in the lead plaintiff's contract), *aff'd*, 786 F.3d 195 (2d Cir. 2015).

The defendants argue that the "Court may consider the class action waivers as incorporated by reference in, or integral to, the [Third Amended Complaint] because the basis of Plaintiffs' injury is their allegation that they purchased JetBlue and American tickets — which incorporate Defendants' CoCs — at supracompetitive prices." (ECF No. 65 at 14 n.4.)[6] Citing *Hahn v. JetBlue Airways Corp*, the defendants maintain that "the defense appears on the face of

---

[6] Alternatively, the defendants say that "the Court may take judicial notice of the CoCs because they are publicly posted on Defendants' websites." (ECF No. 65 at 14 n.4.) Taking judicial notice of the CoCs would not alter the Court's conclusion, as this does not change the fact that the Court cannot rely on undated and unsworn screenshots of the defendants' websites as proof that the plaintiffs had notice of the CoCs.

the Complaint because Plaintiffs' allegations are inextricably linked to the tickets they purchased, which indisputably are governed by the CoCs." (*Id.*)

But *Hahn* is different. Hahn filed a class action complaint against JetBlue, in which he quoted "limited language from the Contract of Carriage," for "breach of contract under New York law for JetBlue's failure to return the $5.60 September 11th Security Fee . . . to customers who cancelled their airline tickets or otherwise did not travel." No. 21-CV-6867, ECF No. 20 at 1, 3 n.3. Judge Carol Amon found that JetBlue's class action waiver affirmative defense was obvious from the face of the complaint. "The Contract of Carriage [was] incorporated by reference into the complaint because Hahn's claim [was] for its breach[;]" "[w]here the claim is for breach of contract, the complaint is deemed to incorporate the contract by reference because the contract is integral to the plaintiffs' claim." *Id.* at 10 (citing *Verzani v. Costco Wholesale Corp.*, 641 F. Supp. 2d 291, 297–98 (S.D.N.Y. 2009)).

In this case, however, the plaintiffs are not claiming breach of contract or asserting that the defendants breached the CoCs. If they had made those claims, the complaint would have incorporated the COCs. *See Hahn*, No. 21-CV-6867, ECF No. 20 at 10; *Verzani*, 641 F. Supp. 2d at 297–98. Rather, the plaintiffs are bringing an antitrust action. The CoCs are not relevant to the plaintiffs' claim that the NEA violated Section 1 of the Sherman Act and that they suffered damages because of that violation. The CoCs are relevant only to the defendants' affirmative defense. Accordingly, they cannot be incorporated by reference.

Separately, the Court cannot rely on the undated screenshots of the defendants' websites, unaccompanied by any affidavit attesting to their origin, to determine whether the plaintiffs had

notice of the CoCs or assented to the CoC terms when they bought their tickets.[7]  (*See* ECF No.

65 at 10.)  *See also Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 102–04 (2d Cir.

2022) (remanding to the district court where "the record [was] insufficiently developed on the

issue of whether the parties entered into an agreement to arbitrate" because the court could not

"determine the matter of arbitrability 'as a matter of law'"); *see also id.* at 104–05 (because "the

record does not contain screenshots of the webpage(s) used to register [] customers for online

banking," the court could not "engage in this analysis, and it was error for the district court to

engage in the inquiry notice analysis based on the copy of the Internet Banking Agreement,

which does not depict the content and design of the webpage as seen by users signing up for

online banking").

The defendants' class action waiver affirmative defense therefore does not appear on the

face of the complaint, and the Court defers consideration of it.  The Court declines to dismiss or

strike the class action allegations at this stage of the litigation.[8]

---

[7] For the same reason, the Court cannot take judicial notice of the screenshots.  Accordingly, without discovery, the Court cannot determine whether the plaintiffs had notice of the CoCs when they purchased their tickets.

[8] In view of this conclusion, the Court does not decide whether equitable estoppel applies — that each plaintiff waived class action claims against both defendants even though the plaintiff may have only agreed to one defendant's CoC (*see* ECF No. 65 at 19–22) — except to note that under New York law, equitable estoppel is an "extraordinary remedy" to be "invoked sparingly and only under exceptional circumstances." *Pulver v. Dougherty*, 58 A.D.3d 978, 979 (3d Dep't 2009); *Gross v. N.Y.C. Health & Hosps. Corp.*, 122 A.D.2d 793, 794 (2d Dep't 1986).  And the Texas Supreme Court has never explicitly adopted or endorsed equitable estoppel.  *Ashby v. Kern*, No. 05-20-00985-CV, 2021 WL 2963750, at *9 (Tex. App. July 14, 2021).  In any event, it is unlikely that equitable estoppel would apply in this action. For example, a plaintiff who bought a JetBlue flight on JetBlue's website did not seem to have any "reason . . . to believe that he (or she) was entering into any kind of relationship with [American]," another airline "ostensibly competing" with JetBlue.  *See Ross v. Am. Exp. Co.*, 547 F.3d 137, 148 (2d Cir. 2008).

## II.   *Per Se* Theory of Liability Under the Sherman Act

The defendants next assert that the complaint does not plausibly allege that the NEA was a *per se* violation of Section 1 of the Sherman Act, so "the Court should dismiss that theory of harm." (ECF No. 65 at 23–24.) This argument is not persuasive.

Under Section 1 of the Sherman Act, "[e]very contract, combination . . . , or conspiracy, in restraint of trade or commerce" is "illegal." 15 U.S.C. § 1. "Although the plain language of this provision broadly covers any agreement to restrain trade, it is axiomatic that 'Congress intended to outlaw only unreasonable restraints.'" *United States v. Aiyer*, 33 F.4th 97, 114 (2d Cir. 2022) (quoting *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006)).

"Typically, alleged restraints on trade challenged under the Sherman Act are analyzed under the rule of reason." *Id.* (citing *Texaco*, 547 U.S. at 5). Under the rule of reason, the factfinder must "decide whether the questioned practice imposes an unreasonable restraint on competition, taking into account a variety of factors, including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect." *Id.* (citing *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997)).

"However, certain restraints are subject to the *per se* rule — that is, they are categorically unreasonable restraints on trade, given their inherently anticompetitive nature." *Id.* (citing *Khan*, 522 U.S. at 10). The *per se* rule "reflects a longstanding judgment that case-by-case analysis is unnecessary for certain practices that, by their nature, have a substantial potential to unreasonably restrain competition." *United States v. Apple, Inc.*, 791 F.3d 290, 321 (2d Cir. 2015) (cleaned up) (quoting *FTC v. Superior Ct. Trial Laws. Ass'n*, 493 U.S. 411, 433 (1990)).

Restraints subject to the *per se* rule "have manifestly anticompetitive effects, and lack . . . any redeeming virtue." *Aiyer*, 33 F.4th at 115 (quoting *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007)). Under the *per se* rule, there is no "need to study the

reasonableness of an individual restraint in light of the real market forces at work." *Id*. "The paradigmatic example of a *per se* illegal restraint on trade under the Sherman Act is a horizontal conspiracy to fix prices with competitors." *Id*. (citing *United States v. Socony-Vacuum Oil Co*., 310 U.S. 150, 223 (1940)). The Supreme Court has held that the practice of territorial allocation of markets is a classic example of a *per se* illegal restraint. *See Palmer v. BRG of Ga., Inc*., 498 U.S. 46, 49–50 (1990); *accord* 15 U.S.C. § 7a note (Findings; Purpose of 2020 Amendment) ("Congress finds [that] . . . [c]onspiracies among competitors to fix prices, . . . and allocate markets are categorically and irredeemably anticompetitive and contravene the competition policy of the United States.").

There are, however, exceptions to the application of the *per se* rule. For example, the "ancillary restraints doctrine," which "governs the validity of restrictions imposed by a legitimate business collaboration, such as a business association or joint venture," "exempt[s]" such agreements "from the *per se* rule;" in those instances, the rule of reason applies. *Aiyer*, 33 F.4th at 115 (quoting *Texaco*, 547 U.S. at 7, and *Aya Healthcare Servs. Inc. v. AMN Healthcare, Inc.*, 9 F.4th 1102, 1109 (9th Cir. 2021)). "When this doctrine applies, 'courts must determine whether the nonventure restriction is a naked restraint on trade, and thus invalid, or one that is ancillary to the legitimate and competitive purposes of the business association, and thus valid.'" *Id*. at 115–116 (quoting *Texaco*, 547 U.S. at 7).

The plaintiffs allege that the defendants violated the Sherman Act because the NEA was a *per se* unlawful agreement in violation of Section 1 of the Act, or in the alternative, that the NEA violated Section 1 under a rule of reason analysis. (*See* ECF No. 53 ¶¶ 1, 156–57.)

In the DOJ action in the District of Massachusetts, the government did not allege that the NEA constituted a *per se* violation of Section 1 of the Sherman Act. *See Am. Airlines Grp. Inc.*,

675 F. Supp. 3d at 110 n.75.  Accordingly, Judge Sorokin analyzed the NEA only under the rule of reason.  *See id.* at 110–112 & n.77.

However, in his findings of fact and conclusions of law, Judge Sorokin found that the "overarching purpose of the NEA [was] anticompetitive" and that the NEA was a "naked agreement" between JetBlue and American "not to compete with one another" and "instead[] operate as a single carrier in the northeast" — "just the sort of 'unreasonable restraint on trade' the Sherman Act was designed to prevent." *Am. Airlines Grp.*, 675 F. Supp. 3d at 74.  In addition, "though the [government] pursued a rule-of-reason challenge," Judge Sorokin reasoned that "at least one of the NEA's core features closely resembles a restraint that is *per se* illegal: the defendants' assignment of various routes to either American or JetBlue as part of their 'optimization' of the combined NEA network." *Id.* at 116.  As Judge Sorokin explained, "[i]n New York's slot-constrained airports alone, American has exited more than a dozen routes that both defendants served before the NEA," including "the high-traffic Boston-to-LaGuardia route."  (*Id.*)  Further, "evidence suggest[ed] that the defendants' ultimate objective, when the NEA [would be] fully implemented, [was] to continue identifying which carrier should fly which routes — with one carrier per market wherever possible." *Id.*  Judge Sorokin explained that "[t]his is a straightforward example of market allocation, . . . among the classic examples of a *per se* violation of the Sherman Act." *Id.* (internal quotations omitted) (citing *Palmer*, 498 U.S. at 49–50).

The defendants ask the Court to dismiss the *per se* theory from this action, arguing that "[t]he rule of reason is almost always applied when evaluating joint ventures like the NEA." (ECF No. 65 at 25.)  According to the defendants, "unlike 'naked' restraints of trade, [joint ventures] 'hold the promise of increasing a firm's efficiency and enabling it to compete more

effectively.'" (*Id.* (quoting *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984).).
The defendants argue that the Court should not rely on Judge Sorokin's "dicta" on the *per se* rule
because "Judge Sorokin was not asked to, and did not, hold that the NEA, or any aspect of it,
was a *per se* violation of the Sherman Act." (*Id.* at 26.) The defendants also seem to argue that
the route allocation of the NEA was "one feature of the NEA" ancillary to the "whole" NEA
scheme. (*See id.*)

At this stage of the litigation, the Court cannot determine that the *per se* rule is entirely
inapplicable. The Supreme Court has repeatedly observed that "territorial restraints" among
competitors, like the NEA route allocation at issue here, "generally remain subject to *per se*
analysis." *In re Delta Dental Antitrust Litig.*, 484 F. Supp. 3d 627, 635 (N.D. Ill. 2020) (citing
*Leegin*, 551 U.S. at 886, *Palmer*, 498 U.S. at 49, and *United States v. Topco Assocs., Inc.*, 405
U.S. 596, 608, (1972)).

Moreover, the defendant's characterization of the territorial route allocations as an
ancillary restraint is not convincing. "Setting aside the difficulty of answering this question at
the pleadings stage . . . the Supreme Court has [] made clear that 'the ancillary restraints doctrine
has no application . . . where the business practice being challenged involves the core activity of
the joint venture itself.'" *Id.* (citing *Texaco*, 547 U.S. at 7). That is certainly the case here, as the
challenged restrictions govern the NEA's core activity of selling flights for northeastern routes.
*See id.*[9]

---

[9] Moreover, the defendants are asking the Court to dismiss a theory of liability rather than a claim, which
is inappropriate on a motion to dismiss. *See In re Am. Express Anti-Steering Rules Antitrust Litig.*, 343
F. Supp. 3d 94, 101–03 (E.D.N.Y. 2018); *HVLPO2, LLC v. Oxygen Frog, LLC*, No. 16-CV-336, 2018
WL 11413543, at *4 (N.D. Fla. May 28, 2018); *Johnston v. Cnty. of Sonoma*, No. 10-CV-03592, 2011
WL 855934, at *4 (N.D. Cal. Mar. 9, 2011). The defendants argue that "[c]ourts often dismiss *per se*
claims while allowing rule of reason claims to proceed." (ECF No. 70 at 15.) But there is no separate
*per se* claim in this case. Rather, the Third Amended Complaint has only one count, and that count
asserts both *per se* and rule of reason theories.

**CONCLUSION**

For these reasons, the defendants' motion to dismiss the action or to strike the class

action allegations is denied.


**SO ORDERED.**

                                                 s/Ann M. Donnelly
                                      _____
                                      ANN M. DONNELLY
                                      United States District Judge


Dated: Brooklyn, New York
           September 6, 2024